The District Court erred in granting Cardo's motion for return of property, both substantively and procedurally, under Ibrahim. The Court substantively erred in holding that the government cannot, absent forfeiture, retain money voluntarily paid to it under an illegal contract. First, the Court abused its discretion in exercising equitable jurisdiction because the government did not callously disregard Cardo's constitutional rights. Because the same erroneous holdings underlie this finding as also underlie the merits. I will turn to the merits. The District Court erred in holding that the government was required to forfeit the money. Forfeiture was not required here because the government acquired title when Cardo voluntarily transferred the money. And also forfeiture is unnecessary under the Imperi Delicto and Climor Doctrines and also under the Undercover Operations Statutes. Title was transferred when Cardo voluntarily paid an undercover agent $40,000 for four alien registration cards. The government submitted, along with its opposition brief to the motion for return of property, a declaration from the undercover ICE agent detailing the facts as they occurred leading up to the transfer of the $40,000. In response to this declaration, Cardo did not submit a declaration of his own, did not submit any contrary statement of facts. All that he submitted that Don't you have to prove that it was an authorized undercover operation in order to retain the money under the Undercover Statutes? No. The Undercover Statutes basically presume that title has already been transferred to the government through the voluntary transfer of funds. So the Undercover Operations Statutes authorize the agency to use the funds for certain purposes, and certainly the operation needs to be certified in accordance with the statutes in order for the money to be used as laid out. Do you have any evidence that it was approved by any high official? Yes. In fact, the operation was duly certified within both of the statutes. The government had proffered that below, but did not include that in a declaration and did not What is that? We don't have any proof then? It's not part of the record as it stands. Were an evidentiary hearing ordered, it would be provided. I'm a little puzzled in one sense. It sounds to me like your principle theory is in effect that the money was never seized from Mr. Cardo. What was seized were four alien registration cards. Absolutely. I'm trying to figure out how the Undercover Agent Statute fits into this, because would that statute have any purpose otherwise if the money were not perceived as being part of the seizure? I mean, if the notion is that the money was never taken from Mr. Cardo, that he gave the money over to the government voluntarily, and I understand some logic in that, but then I wonder, what's the point of the statute that talks about turning over to the Treasury, because wouldn't it have to be turned over to the Treasury whether or not it had been an authorized operation or not? Actually no, that's not what the statutes do. The statutes talk about what the government can do with the money now that it already has it, and they identify a bunch of different authorized uses, including they may be used, the funds may be used to establish proprietary corporations as part of the undercover operation, they may be used to pay for certain undercover operation expenses, and anything remaining shall be deposited in the Treasury. The government's subsequent use isn't at issue here. The question is whether the government can keep it or not. Exactly. I'm still not sure how those statutes in the government's mind speaks to this case at all. They speak to it in the sense that these statutes are, they presume, they are sort of evidence that it makes sense that the government acquires title when the funds are voluntarily paid to the government as part of the undercover operation. So what happened was Cardo, after two prior transactions in this particular transaction, handed $40,000 over to the undercover ICE agent to buy four alien registration cards. He receives the benefit of his bargain. He receives the four cards. He gets out of the car. Then he's arrested. So these statutes say, well, here's what the government can now do with that $40,000. It can use it for specified purposes if it gets permission from, you know, if it's certified. And then whatever's left gets deposited in the Treasury. Suppose you had an operation that wasn't certified. What would happen to the money then? Well, presumably it would only be deposited in the Treasury because that subsection of the statutes does not require certification. So your take on the statute is really it authorizes these other uses as part of the continuing or some other undercover operation. Yes. And so, and that's not what is what at issue here. So you're offering those statutes here only to say this just demonstrates the government keeps the money and we get to decide what to do with it under the statute. We get to decide what to do with it as long as it's certified. But we get, I mean, we keep it either way because the money was paid to us and it was done voluntarily. So the argument is first, the government already acquired title as soon as the money was voluntarily paid to it. And second, under the in pari delicto doctrine, which provides public policy says that the court shall not aid a party to an illegal contract from recovering money. And the seminal Supreme Court case was Clark and that was a bribery case. There was not a conviction. There were factual findings by the lower court. And it's basically what we have here. I mean, there are other offenses that could have been charged were Cardo charged. But basically he was trying to bribe somebody that he understood to be an immigration official to acquire alien registration cards. And so in bribing him with $40,000, he receives outside the proper procedure for alien registration cards. And now he says, well, I want my money back. He doesn't get it back under the in pari delicto doctrine. And the court air argued below, was it not that a pari delicto? It was. And, but the court didn't reach that. Well, the court, uh, it talked about it at length in its order. It said, first of all, Farrell, Mantilla and Smith were premised on convictions. There was no conviction here. And then second, the court said, well, I found an unpublished case where there was no conviction, but the defendant or the claimant admitted in summary judgment proceedings, the wrong doing. So I mean, it would have to be returned to the district court to determine whether the pari delicto requirements are met. I don't believe that it does have to be. Uh, it certainly could be, but I don't think that has to be because what we have here is uncontroverted evidence by the ICE agent. The government's declaration was not disputed by any factual declaration provided by Mr. Cardell. So the only evidence of the facts of what happened here were put in evidence by the government and the government's, the government's opposition to the motion for return of property under Ibrahim should be treated as a motion for summary judgment. The government put forth sufficient facts. Those were not disputed by Mr. Cardell. And on that basis, we believe that the district court should have granted the motions, uh, the government's motion for summary judgment. Now if this court were to define that there is a factual, a genuine issue of material fact, the standard for summary judgment, then yes, it should be remanded for an evidentiary hearing or further factual findings by the district court. But we don't believe that that is necessary. Now what the court, district court cannot do under Ibrahim is it cannot essentially grant summary judgment for Cardell, which is what it appears to have done in the order. Ibrahim states that the motion for return of property itself is not, uh, and it was error for the court to treat that as a motion for summary judgment. It's essentially a complaint. The opposition by the government is a motion for summary judgment. Uh, and if there is a genuine issue of material fact, Ibrahim teaches the lower court then has to follow the usual rules of federal civil procedure. Okay. So if we're treating it as a summary judgment against you, uh, was there a motion made for summary judgment for you? Uh, the United States did make a motion for summary judgment in its opposition to the motion for return of property. On that basis, on the prairie delicto? Uh, on, well, the Ibrahim says that the government's opposition to the motion for return of property is itself a motion for summary judgment. Our opposition did raise the in prairie delicto basis and it was therefore presented, uh, as a basis for the summary judgment motion by the government. There was not a summary judgment motion filed by Mr. Cardell. So we believe that an evidentiary hearing is not required because as a matter of law, the government presented undisputed evidence of the facts underlying this, showing that there was a voluntary transfer of the funds, that it was part of an illegal contract. And moreover, the government raised below, uh, the Climeware doctrine and the district court did not respond to that at all. We believe that that supports an independent basis for, uh, finding in favor of the government and denying the motion for return of property. You're saying that there was no evidence presented in opposition, um, uh, to your claim that it was an illegal contract. The only evidence provided by Mr. Cardell was a receipt of seizure. That we submit is a legal conclusion whether in fact there was a seizure. As a factual basis, he presented no contrary declaration, nothing saying that he did not, uh, hand the money over voluntarily, nothing contrary to the ICE agent's declaration. And so the facts as they existed, uh, were only put forth and undisputed by the government. Now the Climeware doctrine, the district court did not address and that also holds that the government may quiet title through a Rule 41 proceeding. It does not need to pursue forfeiture. And in Climeware and the Alibaba gun cases, uh, the government had sought to get ineffective notice and the statute of limitations had then expired. So the conduct or the property was covered by forfeiture statutes, but they were for technical reasons unable to proceed with forfeiture. And the courts in those cases said, it doesn't matter. The government can still quiet title to the property under a civil equitable proceeding such as Rule 41, which is what we have here. In order to find that those doctrines apply, the court must determine that the property was covered by a forfeiture statute, which is undisputed that it was here, uh, and that Cardo was not an innocent owner. Again, the ICE agent's undisputed declaration is sufficient to support that. The cases in Climeware and Alibaba gun stated, uh, that a contrary rule, quote, would give criminal defendants a conclusively presumptive property right in the fruit of their criminal conduct, even if it was properly seized. Again, we submit there was no seizure here, but, uh, a result clearly prohibited by the forfeiture statutes. Clearly, the forfeiture statutes would not anticipate that somebody who pays bribe money to a government official would then be entitled to recover the money back if for some reason the government does not pursue forfeiture. Uh, with that, I'll save my remaining time. Thank you. Thank you. We'll hear from, uh, Mr. Babcock. Good morning, Your Honors. May it please the Court. My name is Eric Babcock, and I'm here on behalf of, uh, Respondent Mr. Cardo. So what was taken from your client? Forty thousand dollars, Your Honor. And how was it taken? The issue isn't so much that it, whether it was taken. The issue is that it was retained, and it's been nearly three years now, and they haven't given it back. Well, why should they give it back? Well. They didn't take it. It was handed over by your client voluntarily. The law says that if there's no criminal case pending, if it was never filed, or if it's over, there was a trial or guilty plea, at some point, the burden shifts. Why? The money, if we, I mean, the government's main position is it was never seized from your client. It was given over. So if your client gives something over voluntarily, what requires a forfeiture action? Well, uh, the Martinson case in this circuit, for one, which says that if there's been no criminal case and there's no investigation pending, there's no criminal case contemplated. So your client should get back what was seized, right? The government has to justify its continued retention of the money by proving. By the money. My question is, what was seized were four phony alien registration cards. Why isn't that what the claim is for? Your client gave over $40,000 in exchange for four false IDs. What was taken from him involuntarily were the four false IDs. He gave the money over voluntarily. So why isn't the forfeiture action, if necessary, aimed at the four alien registration cards rather than the money? There's no evidence, just to clarify, Your Honor, that they were actually false identification cards. Whatever. The four alien cards isn't what you're applying for. You're applying for money, but the money was given over by your client voluntarily in exchange for the cards. You're not even asking for the cards back. Cards were seized. What makes the money, what puts the money on the table is something that was part of a seizure when your client gave that money over voluntarily. If they want to forfeit it, fine. We'll decide. Need to forfeit it. You gave it to them. Your client gave it to them. So why does it need to be forfeited? Because if there's no criminal case and if there's no forfeiture, they need to give it back. Why? That's what Martinson says. Okay. So you're relying, whatever Martinson says, you think is sufficient to bring the money onto the table? I do. It says if there's no criminal conviction and they're not thinking of bringing a prosecution, then they have to give the money back unless they can prove it's subject to forfeiture. There's a little spot there. They have to give the money back. It wasn't seized, as voluntary given. I don't see anything in that case that says that if it isn't seized, you have to give something back. The way they phrased the question in Martinson, Your Honor, was the continued retention of the money. The person from whom the property is seized is presumed to have the right to its return. Seized. Let me continue to the next sentence. In such a case, the legality of the search and seizure is no longer an issue. Even if the seizure is lawful, the government must justify its continued possession of the property by demonstrating it's contraband or subject to forfeiture. When was the cash seized? It was seized at some point, Your Honor, when they didn't give it back. No, no, no, no, no, no, no. You're presuming, you're presuming the cash is on the table. If your client voluntarily gave it over, how does it become the subject of a Fourth Amendment search and seizure? If they can prove that it's forfeitable, then they get to keep it. No. You are deliberately not answering my question now. And it may be we're not understanding each other. So let me spell this out very carefully. And maybe the facts of Martinson tell me what I need to know. But there was no seizure of cash here. Your client paid over the cash. There was a seizure of four cards. What puts the cash on the table? Why do you say that was seized? Why do you say that's subject to being a forfeiture proceeding? When it was your client who gave the money over to the agent? I'm certainly not disputing your characterization that there was no seizure initially of the $40,000. Certainly, Your Honor is correct that at least according to the Hart Declaration, which is the only evidence we have regarding these facts, there was some sort of transaction. And my client gave the undercover agent $40,000 and in return received four residency cards. So there was no seizure, per se. And that's never been the focus of my argument. And it's not what the law requires in this circuit today, that at some point they keep holding on to the money without returning it and without forfeiting it. That's a wrongful retention. Exactly. But it has nothing to do with seizure. That's right. I agree with that. Well, the case law that you're relying on has to do with seizure. Actually it has to do with continued retention if no cases are filed. If it was seized. No. If they keep holding on to it, at some point, if they just keep holding on to it indefinitely without using it in a case and without adjudicating whether or not there was in fact some sort of wrongdoing here, then they have to justify it. That's the client's claim to the money. How is your client claiming ownership to the money? He gave it over in exchange for something. He bought a car. He bought a bus. He bought a boat. In this case, he bought four cards. But why is it still his money if he gave it over in exchange for something? It's still his money because he couldn't, as a matter of law, buy these cards. He did. I mean, it's news to him that he couldn't do it. It was news to him when they arrested him. But up to that moment, he thought that he was giving the money over. He didn't think that was still his money when he left the room. So what makes it his money after he left the room? Because it turns out there was, in fact, no lawful exchange. But doesn't that run head first into the imperi delicto doctrine? You can't go to court to recover. You made what turned out to be an illegal transaction. You can't go to court to recover what you paid over as part of the illegal transaction. The problem, Your Honor, is if applying the imperi delicto doctrine on the state of these In all the circuit cases cited by the government and distinguished by the district court, those were drug cases where there was conviction in the underlying case. There was no dispute that this money was forfeitable. It was undisputable. In this case, not only was there not a criminal case, the government never proved how this money was forfeitable. But I mean, really, I have trouble understanding what difference that makes. Your client's now trying to recover the money, which he's voluntarily given over. And his reason for trying to recover it is that it turns out this transaction is unlawful, so I should be able to unwind it. I mean, is that it? And how does that not run head first into the imperi delicto doctrine? Well, if there had been a criminal case or a forfeiture case, some adjudication about the legality of these events... Does there have to be a conviction in order for the imperi delicto doctrine to work? No. No, but there has to be some sort of... I'll certainly concede that. Though there was an underlying conviction in all the Smith and Farrell and Mantilla cases, all the reported cases from other circuits, there was actually a conviction. But certainly the doctrines used in other types of civil cases were that there's no related criminal cases. But there's always some sort of adjudication about the legality or illegality of the underlying transaction. Judge Walker asked the government here... The real problem is Judge Walker asked the government to prove the illegality of the transaction here, but they've just assumed it without proving it. When they filed their initial opposition, they submitted a brief and they submitted this declaration from Agent Hart. They said in the brief that this is the proceeds of alien smuggling. Well, the declaration doesn't actually show that. The declaration has to do with discussions about getting green cards for people. There's no evidence that anyone that was ever brought here illegally, harbored illegally. The statute they cited was Section 1324 of Title VIII, which are various provisions having to do with harboring, smuggling, and concealing aliens. There's no evidence of that here. So then we have a hearing, and we argue it, and it gives them a chance to present more evidence. So they submit another brief, another declaration, and then we have another hearing. And still, there's no new evidence proving that this was an illegal transaction. It's argued now, and Ms. Hart... Ms. West says that we should have... that Judge Walker should have had a hearing on the issue, but they never requested a hearing. He gave them ample chance to provide... Well, she was talking about the proof of certification. I didn't hear her suggest that there was... Frankly, I haven't heard anybody suggest that there was doubt about the legality or lack thereof of the transaction. I haven't heard you suggest that the transaction was lawful.  I do suggest and contest whether or not what... Even according to Agent Hart's declaration, which I don't concede any of that, because we were given no discovery on that, but they cited Section 1028 of Title XVIII, which has to do with false identification cards and fraudulent documents. There's no evidence that these green cards used any phony names, phony dates of birth, anything like that. The only other statute that might apply would be Section 1546 or 64. What would be the possible nature of the transaction where your client was paying $40,000 to someone to receive these cards? There's no reason why that person would have... would legitimately have those cards, is there? Well, actually, so far as we know, Agent Hart was posing as an actual immigration official. And Mr. Cardo is not from this country. And in this very city where one of the main immigration courts in the West Coast is, there are lots of lawyers who regularly engage in services for clients to help them get immigration documents. On its face, the amount of monies paid here were not clearly unreasonable. Getting immigration documents costs several thousand dollars in itself. Then if you pay for a lawyer or someone to help you get them, a $10,000 fee is certainly not out of the ballpark. Why instead of your client being entitled to $40,000 under your theory, why wouldn't the individuals that paid him to get them and didn't get them, why aren't they entitled to it instead of him? Well, there's no evidence, Your Honor, that someone paid him to get these cards. Actually, my understanding is these cards were for his family, for his kids and family members. Not that some other unknown individual paid him to get cards, but that these were family cards. There's no evidence this is anyone else's money other than his own. The problem, as I see it, Your Honor, is Judge Walker gave the government ample opportunity to prove its case here. We had two hearings. We had two rounds of briefing. And they submitted declarations both times. But he didn't find the declarations that they submitted were sufficient to prove the alleged wrongdoing. That's a factual finding. The premise there, though, is that it's the obligation of the government to justify its retention. And if the funds were given over voluntarily, I still have a problem with why it isn't the obligation of the claimant to demonstrate that he has an entitlement to get it back when he entered into an agreement where he gave it over voluntarily. I presume your client would have to take the position that it was an unlawful transaction, but not one that he was aware of the unlawfulness such that he could be held subject to the Inferior Delecto Doctrine. And maybe you can make out that case, but why isn't that your client's burden to make out that case? Possession is nine points of the law. The government's got the money, and it didn't take it involuntarily. Usually forfeiture involves involuntary seizures, and there wasn't an involuntary seizure here. So why isn't it your client's burden to make a claim? My client, I think as a matter of law, all my client has to do is show that the money was his initially, and the government's continued to hold on to it without paying it back. The burden is on the government. The hotel I checked out of this morning and say, you're holding $1,000 that was my money initially, give it back to me. Am I going to have any success in doing that? I think the fact that he gave over the money voluntarily instead of having it seized makes some difference here. Why doesn't it make a difference here? Why do we assume this is a forfeiture action? Well because the government doesn't just get to take all these things. The government says essentially that any time it conducts a sting operation, uses an undercover agent, and gets someone to give them money for drugs or documents or any other thing, they don't have to do a forfeiture action. All they have to do is hold on to the money. If you look at the reported decisions of this circuit and any others, I'm confident that a great percentage of the drug cases and other criminal cases have to do with sting operations where people give the government money. And I think there's a lot of courts that would be surprised to learn that the government no longer has to forfeit any of that to keep it. It can just hold on to it. Any time there's a sting operation by the Immigrations and Customs Enforcement, it can just hold on to the money without conducting forfeiture operations. By virtue of these statutes which, and I see that I'm well over my time. We've taken you that time. I hear your argument basically as one that relies on precedent. I understand that and we'll go back and look at the cases again. But frankly, I haven't heard any logic that explains why this should be treated as a forfeiture rather than as a claim against the government. And when I pose that question, I want to be very clear about this. You've offered me precedent back and that's fine. We're bound by precedent. But if the precedent doesn't say that, the fact that the government may forfeit in some circumstances doesn't mean that they always have to forfeit. And if the precedent doesn't say you have to forfeit, then I think we've still got a valid question as to why is it a forfeiture if your client gave over the money voluntarily. I'm not saying, even assuming they don't have to forfeit in all circumstances, they still have to prove the money is subject to forfeiture. Even if this, in this proceeding, if they'd provided sufficient evidence to prove this money was actually forfeitable, then I don't think Judge Walker would have ordered its return. He said, that still begs the question as to whether it's the government's burden to forfeit or whether it's your client's burden to seek the claim. And that's maybe the open question. I think the reason is, Your Honor, if the government hasn't bothered to pursue a criminal case or a forfeiture proceeding, the court is entitled, Judge Walker is entitled, to ask the government to justify why not. These are the procedures usually used. You didn't go through them. Okay. If you have a reason, show me why. Show me why you didn't go through the normal procedures. And if they have a good reason, fine. But he didn't find that they'd proven that here. Thank you. Ms. West. Thank you. The agent declaration, which counsel concedes was undisputed, did provide sufficient facts for the court to conclude that there was an illegal contract and the money was voluntarily paid in the course of that. The agent stated that he was posing as a corrupt immigration official, that Cardo sought his help in getting immigration documents for himself and others, and in smuggling Syrian nationals into the United States. He paid $12,500 for an alien registration card for himself, $15,000 for someone named Awad, $40,000 in the instant transaction of buying four alien registration cards for four other Syrian nationals. There was a post-arrest interview in which Cardo admitted knowing that he obtained the money. The declaration also references that there were transcripts, transcripts because there were recordings, of several of these meetings. These facts are sufficient under a summary judgment standard for the court to find as a matter of law for the government. These facts were uncontroverted. Therefore, there was no genuine issue of material fact, and the court, we believe, should have found in favor of the government and allowed it to retain these funds. No resort to forfeiture was necessary because the court could make its own factual findings by a preponderance of the evidence, and do so just as in Clark, another bribery case. Well, if you've got two different things going on here, you talk about summary judgment, then you talk about preponderance of the evidence. Those aren't the same. That's correct. If the court were to have found that there was a genuine issue of material fact, then it would make factual findings by preponderance of the evidence. Here, because there was no controverted fact, there was no contrary declaration by Cardo, as his counsel here concedes, there was no disputed issue of material fact, and the court should have on its face granted judgment for the government, granted the government's motion for summary judgment as embodied in its opposition brief. Under what theory now? Are you going under the forfeiture statutes or under the imperi delicto? Well, under imperi delicto, there was no reason for the government to resort to forfeiture because the money was voluntarily paid to the government. He bought four alien registration cards. What he is saying here today is, if I get caught in an illegal contract, then I should get my money back. And the imperi delicto doctrine says that that is clearly not true. The courts will not aid somebody like that. Now, even if the court were to look at Martinson, what Martinson says is that when an investigation is over and there are no charges pending, the government bears the burden of showing that it, quote, has a legitimate reason to retain the property. The legitimate reason here is the money was voluntarily paid to the government. Your opponent said that the court tried and tried through two hearings to get the government to say something about why it was illegal. Is that correct? It is not correct. In fact, the reason that it was illegal is stated in the ICE agent's declaration, and it supports a number of offenses. First, 18 U.S.C. 201, bribery of a public official. Second, 18 U.S.C. 1028, fraud in connection with identification documents. And third, 8 U.S.C. 1324, under either an attempt or conspiracy theory to smuggle aliens. The government did not need to pursue forfeiture because it already had title when the money was voluntarily paid. And the last thing I would just like to say is that this court's rulings on these issues will be extremely important to ICE and to other undercover agency operations. And so we urge the court to find that where money is voluntarily transferred to the government as part of an illegal contract, the government may retain the funds without resorting to forfeiture proceedings. Now, there are a lot of cases involving forfeiture in contexts not dissimilar to this. I mean, sting operations, drug busts, and so forth. Obviously, forfeiture is going to be required when you arrest the guy with cash or when you search the property to get the cash. But there are cases that involve forfeiture after there's been a transaction that is in some fashion analogous to this. And our position is that it is unnecessary. And an example of that, a good example, I think, is the Mantilla case. And that's a Third Circuit case fairly recent. I think it was 2002. And there, the defendant filed a civil action seeking return of money that he paid to an undercover agent for cocaine. He was convicted in that case. But again, under Clark, that certainly isn't necessary. The customs did not initiate administrative forfeiture proceedings, but deposited the money in an undercover account pursuant to 19 U.S.C. 2081. The defendant filed a motion for return of property complaint. Customs moved to dismiss, attaching an affidavit. The district court properly treated that as a motion for summary judgment and granted summary judgment for customs under the imperi delicto doctrine. The Third Circuit affirmed finding that imperi delicto doctrine prevents return of the property. It started its analysis with Clark, as should this Court, and then talked about the cases having extended it through Farrell to drug transactions with undercover agents and saying that forfeiture does cover the money, but forfeiture is not, quote, the only means by which the government may retain funds intended for purchase of narcotics, which was the situation in that case, citing the Climor doctrine. And so here we submit, and in that case also, the Court did state in a footnote that it need not reach the argument that forfeiture is also unnecessary under the 2081 undercover operations statute. But these facts, it wasn't buying drugs, it was buying alien registration cards, and it was bribery of a public official, as in Clark. We submit that it tracks exactly. I see that I'm well over my time. If the Court has no further questions, we'll submit on the briefs. Thank you. Thank you. Thank both counsel for the argument. The case just argued is submitted.
judges: Hug, Clifton, Archer